ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| ORIENTAL BANK<br><br>Peticionario<br><br>v.<br><br>FULANO DE TAL Y SUTANA DE TAL COMO HEREDEROS DESCONOCIDOS Y/O PARTES CON INTERÉS EN LA SUCESIÓN DE ALBERTO GOMEZ FLORES<br><br>Recurridos | KLCE202400936 | *Certiorari*, procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Número: CG2022CV04076<br><br>Sobre: Ejecución de Hipoteca: Propiedad Residencial |

Panel integrado por su presidenta, la Jueza Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm.

*Prats Palerm, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de noviembre de 2024.

Comparece Oriental Bank ("Peticionario") mediante *Certiorari* y solicita la revisión de la *Orden* emitida el 24 de julio de 2024 y notificada el 30 de julio de 2024, por el Tribunal de Primera Instancia, Sala Superior de Caguas ("TPI"). Mediante el referido dictamen, el TPI denegó la solicitud de reconsideración presentada por el Peticionario, a los fines de solicitar el retiro de $15,204.94, balance restante para la cancelación de la hipoteca ejecutada, o, en la alternativa, celebrar una vista evidenciaria para probar que el balance de cancelación no había sido satisfecho por la suma previamente autorizada a retirar por el foro primario.

Por los fundamentos que expondremos a continuación, se expide el auto de *certiorari* solicitado y se *Revoca* el dictamen recurrido.

**I.**

El pleito de marras tiene su origen en una *Demanda* sobre ejecución de hipoteca *in rem*, instada el 9 de diciembre de 2022 por Oriental Bank en contra de los miembros desconocidos de la Sucesión de Alberto Gómez Flores ("Sucesión"). En lo aquí pertinente, el Peticionario adujo que había suscrito

un *Pagaré* por la suma principal de $66,000.00, bajo una tasa de interés anual de 6.5%, con el difunto Alberto Gómez Flores ("señor Gómez Flores"), y que, en virtud de este, había otorgado una hipoteca sobre la siguiente finca:

> RÚSTICA: Solar rotulado "A" radicado en el Barrio Navarro del término municipal de Gurabo, Puerto Rico, con una cabida superficial de (0.596 cds) cero punto quinientos noventa y seis de cuerda, equivalentes a 2,344.068 metros cuadrados. En lindes por el NORTE, en 55.70 metros con terrenos del Dr. Blasini; por el SUR, en 26.01 metros con un camino municipal asfaltado y en 29.54 metros, con el solar 'B' propiedad de Jaime García Rodríguez; por el ESTE, en 23.77 metros con la propiedad de Cruz Mercado y 36.25 metros con el solar 'B' de Jaime García Rodríguez; y por el OESTE, en 65.79 metros con terrenos de Carmen Cruz. Casa para fines residenciales de concreto y bloques compuesta de tres dormitorios, sala, comedor, cocina, un baño y balcón, mide treinta pies de ancho por treinta pies de largo.

> FINCA NÚMERO: 8,137, inscrita al folio 260 del tomo 210 de Gurabo, sección II de Caguas.

Además, Oriental Bank señaló, sin especificar la totalidad del balance de cancelación o en qué momento la hipoteca fue declarada vencida, que, el principal adeudado era de $50,959.22. Asimismo, indicó que, la Sucesión había incumplido con el pago de las mensualidades, y por todo lo cual, el Peticionario había declarado el préstamo vencido. Por tanto, sostuvo que procedía la ejecución del gravamen hipotecario por la vía ordinaria.

Posteriormente, el 3 de febrero de 2023, el Peticionario presentó una *Demanda Enmendada*, a los únicos efectos de incluir como codemandados a los herederos conocidos del señor Gómez Flores: Olga María, Javier A., Samira, y Derek, todos de apellido Gómez.

Tras varias instancias procesales, el 20 de marzo de 2023, el TPI emitió una *Sentencia* en rebeldía, notificada el 27 de marzo de 2023. Mediante el referido dictamen, el foro primario declaró *Ha Lugar* la demanda de epígrafe y determinó que existía: "*un balance de principal pendiente de pago ascendente a $50,959.22, más intereses y recargos*".[1] (Énfasis suplido).

El 21 de agosto de 2023, la Oficina del Alguacil del TPI procedió a vender la propiedad en pública subasta a Inmobiliarias Naihomy Inc., por la cantidad de $76,000.00. Prontamente, el 22 de agosto de 2023, Oriental

---

[1] Véase, Apéndice de la Parte Peticionaria, a la pág. 6 (*Sentencia*).

Bank presentó una *Moción Solicitando Retiro de Fondos Consignados y el Desembolso de los Intereses Generados bajo la Ley Núm. 69 de 14 de agosto de 1991*, en la cual solicitó autorización para retirar los fondos consignados hasta la suma de $68,650.16, correspondiente al balance de cancelación. El 29 de agosto de 2023, el foro recurrido emitió la *Orden de Confirmación de Adjudicación o Venta Judicial.*

Luego, el 18 de septiembre de 2023, el Peticionario instó una *Moción Reiterando Solicitud de Retiro de Fondos Consignados y el Desembolso de los Intereses Generados bajo la Ley Núm. 69 de 14 de agosto de 1991.* El 2 de noviembre de 2023, el TPI denegó la solicitud sobre retiro de fondos e instruyó a Oriental Bank a producir una tabla de amortización que reflejara la totalidad de los pagos. El 17 de noviembre de 2023, el Peticionario remitió la tabla solicitada por el foro primario.

El 17 de enero de 2024, el foro recurrido dictó una *Orden*, mediante la cual ordenó a la Unidad de Cuentas a emitir un cheque a favor del Peticionario, por la suma de $53,167.45, más los intereses que dichos fondos hubieran generado. Insatisfecho, el 5 de febrero de 2024, Oriental Bank presentó una *Moción Urgente Solicitando Retiro de Fondos Consignados y el Desembolso de los Intereses Generados bajo la Ley Núm. 69 de 14 de agosto de 1991.* El Peticionario expresó que, la suma de dinero por la cual el foro primario ordenó que se expidiera el cheque no cubría la totalidad de la deuda, la cual adujo ser de $68,650.16, a la fecha de la subasta. Por lo cual, solicitó que el cheque fuese emitido tomando en cuenta la diferencia de $15,482.71 pendiente. En respuesta, el foro primario emitió una *Orden*, notificada el 12 de febrero de 2024, mediante la cual denegó la solicitud del Peticionario.

El Peticionario reiteró su solicitud mediante moción, instada el 14 de febrero de 2024. Para sustentar lo previamente alegado, el Peticionario presentó prueba documental del balance adeudado. El 23 de febrero de 2024, el foro primario declaró *No Ha Lugar* la petición instada por Oriental Bank.

El 14 de marzo de 2024, nuevamente, Oriental Bank radicó una *Solicitud de Retiro de Fondos*. En conjunto, presentó un desglose de partidas del balance de cancelación donde, por primera vez, se indicó que la hipoteca fue declarada vencida el 1 de octubre de 2020. A su vez, presentó la declaración jurada de Rafael Vélez Rivera, Oficial de Oriental Bank, quien declaró que la suma de $68,650.16 correspondía a los intereses, recargos, costas, honorarios de abogados y otros gastos contractualmente pactados hasta el saldo de la deuda.

Posteriormente, el 15 de marzo de 2024, la Unidad de Cheques remitió un cheque a favor de Oriental Bank, por la cantidad de $53,445.22, correspondiente a la suma de $53,167.45 concedida por el TPI, más los intereses generados en virtud de la Ley 69-1991, 7 LPRA sec. 251 *et seq.* El 23 de abril de 2024, el TPI denegó la solicitud instada por el Peticionario el 14 de marzo de 2024.

El 7 de mayo de 2024, Oriental Bank recalcó su solicitud sobre retiro de fondos. La referida solicitud fue declarada *No Ha Lugar* por el foro primario, el 14 de mayo de 2024. Como corolario, el 28 de mayo de 2024, Oriental Bank presentó una *Solicitud de Vista Evidenciaria.* El Peticionario alegó que, la suma solicitada estaba basada en el balance total del préstamo al celebrarse la subasta y que, desconocía el origen de la cantidad concedida por el TPI, ya que la misma no correspondía al principal mencionado en la *Sentencia,* ni al balance de cancelación. Por lo tanto, solicitó la celebración de una vista evidenciaria, en la cual pudiera comparecer un oficial del banco, con el fin de demostrar que el balance de cancelación no había sido satisfecho.

El 28 de junio de 2024, el foro primario declaró *No Ha Lugar* la solicitud de vista evidenciaria. Así las cosas, el 11 de julio de 2024, Oriental Bank instó una *Solicitud de Reconsideración,* en la cual, de nuevo, solicitó el retiro de la diferencia adeudada o, en la alternativa, la celebración de la vista evidenciaria. La reconsideración fue denegada mediante *Orden* emitida el 24 de julio de 2024 y notificada el 30 de julio de 2024.

Inconforme, el 29 de agosto de 2024, Oriental Bank acudió ante esta Curia mediante recurso de *Certiorari* y solicitó la revisión de la *Orden* notificada el 30 de julio de 2024. El Peticionario le imputó al foro recurrido la comisión del siguiente error:

**Erró el Honorable TPI al autorizar el retiro de una suma menor a nuestra acreencia y al negarse posteriormente al autorizar el retiro de la deficiencia para cubrir la misma, causando que el banco recurrente no pueda cobrar la totalidad de la deuda, a pesar de existir fondos suficientes consignados, todo ello contrario a la sentencia dictada, orden y mandamiento de ejecución, orden de confirmación de venta, escritura de hipoteca, balance de cancelación y declaración jurada obrantes en autos, y en contravención al Art. 108 de la Ley del Registro de la Propiedad, 30 LPRA sec. 6145.**

El 3 de septiembre de 2024, le concedimos a la parte recurrida un término de diez (10) días para presentar su alegato en oposición. Consecuentemente, el 13 de septiembre de 2024, dictaminamos una *Resolución* bajo la Regla 83.1 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 83.1, mediante la cual le ordenamos al Hon. Elías Rivera Fernández a fundamentar la *Orden* notificada el 30 de julio de 2024, dentro de un término de veinte (20) días. Por su parte, le concedimos un término al Peticionario para exponer su posición sobre el fundamento que expidiera el TPI.

El 10 de octubre de 2024 el TPI notificó una *Resolución* en la cual dispuso lo siguiente:

[E]l cómputo realizado por el Tribunal a base del acápite número 6 de la Demanda, lo constituye el principal adeudado de $50,959.22. Dicha cantidad es el balance de principal del préstamo al momento de la radicación de la Demanda en diciembre de 2023, luego del descargo de la Quiebra. Aplicados los intereses pactados desde la radicación de la Demanda hasta la adjudicación de la subasta, le corresponde la cuantía en intereses de $2,208.23; honorarios de abogados pactados por $6,660 y entre los gastos alegados, se adjudicó el estudio de título por $43.75. El resto de los gastos no fueron probados a satisfacción del Tribunal. Para un total de $59,811.20. Habiéndose desembolsado previamente $53,167.45, el Tribunal estaría expidiendo una nueva Orden de Retiro por $6,643.75. El restante de los fondos será retenido en el tribunal para la futura distribución a la parte demandada.

En respuesta, el 22 de octubre de 2024, Oriental Bank adujo que, el balance de cancelación presentado el 14 de marzo de 2024 establece que los intereses ascendentes a $9,566.52 deben ser calculados a partir del 1 de

octubre de 2020, fecha en que el préstamo fue declarado vencido. Además, expresaron que, mediante la *Resolución* notificada el 10 de octubre de 2024, el TPI les confirió credibilidad a las partidas correspondientes a honorarios de abogado y al estudio de título, las cuales surgen del balance de cancelación, pero que obvió las restantes partidas esbozadas en el mismo. Perfeccionado el recurso, procedemos a resolver.

## II.

### -A-

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. En esencia, se trata de un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *800 Ponce de León Corp. v. American International Insurance,* 205 DPR 163 (2020); *Medina Nazario v. McNeil Healthcare, LLC,* 194 DPR 723, 728-729 (2016); véase, además, Art. 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491. Por tanto, la expedición del auto de *certiorari* descansa en la sana discreción del tribunal revisor. *Íd.; IG Builders et al v. BBVAPR,* 185 DPR 307, 337-338 (2012).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, delimita expresamente las instancias en las que este Tribunal de Apelaciones puede expedir los recursos de *certiorari* para revisar resoluciones y órdenes interlocutorias del foro de Instancia. *800 Ponce de León Corp. v. American International Insurance, supra; Scotiabank de Puerto Rico v. ZAF Corporation,* 202 DPR 478, 487 (2019). En lo pertinente, la referida regla dispone lo siguiente:

> [e]l recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en

cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari, en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. 32 LPRA Ap. V, R. 52.1.

Aun cuando al amparo del precitado estatuto adquirimos jurisdicción sobre un recurso de *certiorari*, la expedición del auto y la adjudicación en sus méritos es un asunto discrecional. No obstante, tal discreción no opera en el abstracto. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008). La Regla 40 del Reglamento del Tribunal de Apelaciones establece los criterios que este foro tomará en consideración para ejercer prudentemente su discreción para expedir o no un recurso de *certiorari*, a saber:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para analizar el problema.
C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B.

De otra parte, este Tribunal solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando se demuestre que hubo un craso abuso de discreción, prejuicio, parcialidad o error manifiesto. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). En el ámbito jurídico la discreción ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013). La discreción se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia. *Íd.* Por lo anterior, un adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de

razonabilidad. *Umpierre Matos v. Juelle Albello*, 203 DPR 254, 275 (2019);

*Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**-B-**

La *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico,* Ley Núm. 210-2015, según enmendada, 30 LPRA sec. 6001 *et seq.* ("Ley 210-2015"), regula el procedimiento para la ejecución de hipotecas. En lo aquí pertinente, el referido estatuto establece que:

> Los acreedores hipotecarios posteriores y los titulares de derechos reconocidos en sentencias finales y firmes debidamente anotados o asegurados mediante embargo al crédito que se ejecuta, podrán radicar dentro del procedimiento de ejecución una moción juramentada estableciendo la cuantía del crédito que se les adeuda. Art. 98 de la Ley 210-2015, 30 LPRA sec. 6135.

De igual modo, el Art. 99 de la Ley 210-2015, 30 LPRA sec. 6136, indica que:

> Una vez se declare con lugar la demanda y advenga final y firme la sentencia dictada en el procedimiento de ejecución de hipoteca, el tribunal ordenará, a instancia del ejecutante, la expedición del correspondiente mandamiento, para que el alguacil proceda a la subasta de los bienes hipotecados.

Asimismo, celebrada la venta en pública subasta, el Art. 108 de la Ley Núm. 210 de 8 de diciembre de 2015, según enmendada, conocida como "*Ley de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*" ("Ley 210-2015"), 30 LPRA sec. 6145, establece que:

> Si se confirma la venta, **el precio de venta se destinará, sin dilación, al pago del crédito hipotecario del acreedor**. El sobrante lo depositará el alguacil en la secretaría del tribunal para que éste disponga lo que proceda respecto a los acreedores posteriores siguiendo el orden o rango que cada uno tenga en relación con el crédito ejecutado.
>
> (Énfasis suplido)

En el caso del remanente, si alguno y si no existiera crédito o responsabilidad posterior, se entregará al deudor o al tercer poseedor. *Íd.*

**III.**

Antes de dilucidar el error aquí señalado, cabe destacar que, como norma general, la presentación de un recurso de *certiorari* no paraliza los procedimientos ante el foro de instancia. No obstante, tras la presentación del recurso de epígrafe, al amparo de la Regla 83.1 de nuestro Reglamento,

le concedimos al Hon. Elías Rivera Fernández la oportunidad de fundamentar la determinación recurrida. La precitada regla establece lo siguiente:

> **Cuando el Tribunal de Apelaciones determine que la sentencia o resolución final del Tribunal de Primera Instancia, de un organismo o de una agencia administrativa carece de los fundamentos necesarios para ejercer adecuadamente su función revisora deberá, en auxilio de jurisdicción, <u>retener jurisdicción sobre el recurso</u>** y ordenar al tribunal de instancia, organismo o agencia que fundamente la sentencia o resolución final previamente emitida. Una vez recibido el dictamen fundamentado, el tribunal podrá solicitar de las partes que se expresen y procederá a resolver el asunto. *Íd.*

(Énfasis y subrayado suplido)

A tales efectos, esta Curia tomó jurisdicción del caso de epígrafe. Advertimos que, el Juez actuó sin jurisdicción y se extralimitó en su discreción al dictar una *Resolución* en reconsideración, mediante la cual modificó el dictamen que se encuentra ante nuestra consideración. Del mismo modo, examinada la referida *Resolución*, encontramos que esta no fundamentó adecuadamente la procedencia del cómputo utilizado para adjudicar la cuantía concedida al Peticionario. El dictamen emitido bajo la Regla 83.1, *supra*, únicamente establece que, la cuantía de $2,208.23, presuntamente correspondiente a los intereses pactados, fue calculada desde diciembre de 2022, fecha en la se presentó la demanda de autos, hasta la adjudicación de la subasta. Asimismo, el Juez omitió consignar la razón por la cual no tomó en consideración las demás partidas desglosadas por Oriental Bank.

Ahora bien, el Peticionario sostiene que el foro *a quo* erró al autorizar el retiro de una suma menor a la solicitada y al, posteriormente, denegar su solicitud para la celebración de una vista evidenciaria, a los fines de demostrar la cantidad verdaderamente adeudada por concepto del principal e intereses. Le asiste la razón. Veamos.

Luego de que la *Sentencia* emitida el 20 de marzo de 2023 adviniera final y firme, la propiedad hipotecada fue vendida en pública subasta a favor de Inmobiliarias Nahiomy, por la cantidad de $76,000.00. Por consiguiente,

Oriental Bank, como acreedor de la hipoteca, presentó una moción solicitando el retiro de fondos por $68,650.16, correspondientes al balance de cancelación. Previo a ordenar la expedición del cheque a favor del Peticionario, el TPI solicitó la presentación de una tabla de amortización que reflejara la totalidad de los pagos de la hipoteca. Presentada la tabla de amortización, el foro recurrido procedió a ordenarle a la Unidad de Cuentas a expedir un cheque a favor de Oriental Bank por la cantidad de $53,167.45, más los intereses que los fondos consignados hubieran generado. Como resultado, Oriental Bank procedió a instar varias solicitudes de retiro de fondos, mediante las cuales reiteró la suma de $68,650.16 como lo adeudado. Para evidenciar la procedencia de dicha cuantía, el Peticionario presentó el balance de cancelación, así como una declaración jurada de un Oficial de Oriental Bank. Sin embargo, el foro recurrido declaró *No Ha Lugar* todas las peticiones presentadas. Así las cosas, con la intención de probar el balance adeudado, Oriental Bank solicitó la celebración de una vista evidenciaria, dicho petitorio también fue denegado por el TPI.

La Ley 210-015, *supra*, claramente dispone que el dinero obtenido de la subasta de la propiedad hipotecada será destinado al pago del crédito hipotecario del acreedor. Como es sabido, el balance de cancelación del crédito hipotecario no solo incluye el principal adeudado, sino también los recargos, intereses, costas, gastos y honorarios de abogado, de aplicar. En el caso de autos, la *Sentencia* dictaminada por el TPI establecía que existía "*un balance de principal pendiente de pago ascendente a $50,959.22, **más intereses y recargos***".[2] (Énfasis suplido).

Surge del balance de cancelación presentado por el Peticionario que, la hipoteca fue declarada vencida el 1 de octubre de 2020 y, como resultado, la cuantía adeudada en concepto de intereses hasta la venta de la propiedad ascendía a $9,566.52, calculado a razón de $276.03 por 34 meses, más un *per diem* de $9.08 por 20 días. A su vez, el balance evidenció la suma de

---

[2] Véase, Apéndice de la Parte Peticionaria, a la pág. 6 (*Sentencia*).

$8,124.42, correspondiente a recargos, costas, gastos y honorarios de abogado.[3]

Mediante *Sentencia,* el foro recurrido determinó que existía un balance principal pendiente de pago de $50,959.22, más intereses y recargos, sin especificar las cuantías correspondientes a los mismos. Conforme surge, el monto adeudado por razón de intereses, recargos, costas, gastos y honorarios de abogados totaliza la cantidad de $17,690.94. Por consiguiente, el balance de cancelación asciende a $68,650.16.

No obstante, el TPI estableció que, los intereses debían ser calculados desde el momento en que se presentó la demanda de epígrafe, el 9 de diciembre de 2022, lo cual equivale a una cuantía en intereses de $2,208.23. A su vez, el foro primario no tomó en consideración las partidas correspondientes a recargos, costas, gastos y honorarios de abogado que forman parte del crédito hipotecario del acreedor. Como resultado, el foro primario solo autorizó el retiro de $53,167.45. Así, pues, Oriental Bank fue entregado un cheque por la cantidad de $53,445.22, correspondiente a lo autorizado por el TPI y los intereses que dichos fondos consignados generaron.

Aquilatada la prueba documental, no encontramos fundamento alguno para sostener el cómputo efectuado por el foro primario. Los intereses en el caso de marras debían ser calculados desde el momento en que la hipoteca fue declarada vencida hasta la fecha en que la propiedad fue vendida en pública subasta. Asimismo, se debía tomar en consideración las demás partidas adeudadas en virtud de la cancelación de la hipoteca. Resulta forzoso concluir que, el TPI erró al no conceder el monto restante de $15,204.94, correspondiente a la diferencia adeudada del balance de cancelación.

**IV.**

Por los fundamentos que anteceden, se expide el auto de *certiorari* solicitado y se *Revoca* el dictamen recurrido. Se ordena al TPI a ordenar a la

---

[3] Véase, Apéndice de la Parte Peticionario, a la pág. 190 (*Balance de Cancelación*).

Unidad de Cuentas a emitir un cheque a favor de Oriental Bank por la suma de $15,204.94, más los intereses que dichos fondos hubieran generado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones